# SHARER *v.* McHENRY.

------

PATENTS; INTERFERENCE; REASONABLE DOUBT; UNCORROBORATED TESTIMONY OF PARTY TO INTERFERENCE.

1. Where one of the parties to an interference has been granted a patent before the declaration of the interference, the other party, to show priority of invention, must have proof showing that fact beyond reasonable doubt.
2. The uncorroborated testimony of one of the parties to an interference as to prior conception, the making of drawings, and actual construction will not be accepted, although it may appear plausible; *following* Mergenthaler v. Scudder, 11 App. D. C. 264.

No. 176. Patent Appeals.   Submitted November 12, 1901.   Decided December 4, 1901

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.        *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Henry E. Everding (Mr. J. Walter Douglass* being with him on the brief) for the appellant.

*Messrs. Alexander & Dowell* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference proceeding involving the invention of an improvement in drying-kilns.

The issue reads as follows:

1. In a drying-kiln, the combination of the drying-chamber, the furnace for heating the same, an air-inlet at one end of said chamber, an uptake at the receiving end thereof, and smoke-flues exterior to the drying-chamber for conducting smoke to the said uptake; with a valve for establishing direct communication between the upper part of said drying-chamber and said uptake, and valved smoke-flues for establishing communication between the bottom part of said drying-chamber, and said uptake, said valved outlets for the vapors from the drying-chamber, being located at the end of the chamber opposite the air-inlet, and being adapted to be used alternately, substantially as described.

2. In a drying-kiln, the combination of the drying-chamber, a furnace for heating the same at one end thereof, heating-passages beside the furnace; an uptake at the opposite end of the chamber and a smoke-flue under the drying-chamber for conducting smoke to said uptake, a valved opening in the top of the drying-chamber, near the inlet end thereof for establishing direct communication between the upper part of said drying-chamber, and said uptake, and a valved flue for establishing communication between the bottom part of said drying-chamber, and said uptake, said valved outlets for the vapors from the drying-chamber being adapted to be used alternately, substantially as described.

3. In a drying-kiln, the combination of the drying-chamber, an uptake at one end thereof, a furnace under the other end thereof, and smoke-flues under the floor of the drying-chamber for conducting the products of combustion from the furnace to the uptake; with a metallic plate forming part of the top of said flue and of the floor of the drying-chamber and located near the primary outlet of the furnace, so as to be subjected to the most intense heat therefrom, for the purpose and substantially as described.

4. In a drying-kiln, the combination of the drying-chamber, an uptake at the receiving end thereof, a furnace under the discharge end thereof, and smoke-flues under the floor of the drying-chamber for conducting the products of combustion from the furnace to the uptake; with air-heating passages in the walls of the furnace, communicating with the interior of the chamber, and a metallic plate forming part of the top of said flue and of the floor of the drying-chamber and located near the primary outlet of the furnace so as to be subjected to the most intense heat therefrom, said air-heating passages opening into said drying-chamber at opposite ends of said metallic plate, for the purpose and substantially as described.

5. In a drying-kiln, the combination of the drying-chamber, the uptake at the receiving end thereof, the vertical parallel smoke-flue and vapor-flue communicating with said uptake above the top of the drying-chamber, a valved opening in the top of the drying-chamber near the receiving end thereof directly communicating with said uptake and an opening in the floor of said chamber near the receiving end thereof, communicating with the lower end of said vapor-flue, and a valve in said vapor-flue, said valved opening and said vapor-flue to be used alternately, for the purpose and substantially as described.

6. In a drying-kiln, the combination of the drying-chamber, a furnace under the discharge end of the chamber, air-heating passage in the walls of the furnace, communicating with said drying-chamber through openings in the floor thereof, a smoke-flue underlying the floor of the drying-chamber for conducting the products of combustion from the furnaces to the smoke-flue at the discharge end of the drying-chamber, and a metallic plate forming part of the top of said horizontal smoke-flue and of the floor of the drying-chamber and located near the furnace, for the purpose and substantially as described.

7. In a drying-kiln, the combination of the drying-chamber, the uptake at the receiving end thereof, the vertical smoke-flue and vertical vapor-flue communicating with said uptake,

a valved opening in the top of the drying-chamber near the receiving end thereof, directly communicating with said uptake, and an opening in the floor of said chamber near the receiving end thereof, communicating with said vapor-flue, and a valve in said vapor-flue, with a furnace under the discharge end of the chamber, air-heating passages in the walls of the furnace, communicating with said drying-chamber through openings in the floor thereof, a smoke-flue underlying the floor of the drying-chamber for conducting the products of combustion from the furnace to the vertical smoke-flue, and a metallic plate forming part of the top of said horizontal smoke-flue and of the floor of the drying-chamber and located near the air-inlets, for the purpose and substantially as described.

The appellee, William B. McHenry, holds a patent for the invention issued July 18, 1899, upon an application filed October 5, 1898.

The appellant, George W. Sharer, filed his application August 2, 1899, and at the same time requested a prompt declaration of interference with McHenry. This application contains a counterpart of the specifications, claims and drawings of the McHenry patent, and the claims are substantially those embodied in the issue.

Each party testified on his own behalf, at considerable length, and it is upon this evidence, in connection with letters that confessedly passed, and others claimed to have passed, between them, that the determination of the case chiefly depends.

Sharer was a patentee and contractor for the erection of drying-kilns, used principally in brick-making, and McHenry was a practical brick-layer who entered Sharer's employ, first in 1892, and was engaged, from time to time, in constructing kilns for him, or superintending their construction.

Each party claims a conception of the invention of the issue, long antedating his application for a patent — Sharer in 1896, and McHenry in 1894; and their evidence on these points, as well as in respect of reduction to practice, is not certain and satisfactory.

11

Sharer's contention is, that McHenry obtained the invention from his disclosures and used sketches and descriptions furnished by him (Sharer) as the foundation of his (McHenry's) application, and the model of his drawings.

The examiner of intereferences rendered a decision in favor of Sharer, which was reversed by the examiners-in-chief. Their decision was affirmed on final appeal to the Commissioner.

In the first two of these different decisions, the evidence is reviewed at length and fairly, with clear statements of the conclusions therefrom. The points were briefly summed up by the Commissioner whose view coincided with that of the examiners-in-chief.

Upon a careful consideration of the entire record, our own conclusion is that the testimony, on behalf of Sharer, is not sufficient to overcome the burden of proof imposed upon him by the condition of McHenry's possession of a regularly-issued patent when his application was made.

This rule in respect of the conclusive weight of evidence necessary to overcome the priority of invention evidenced by a regular and formal patent, has been long established and our observation of its operation in general has had no tendency to incline us towards laxity in its application.

We see no good reason for reviewing the evidence now, as that has been fully and fairly done in the decisions of the Patent Office tribunals that form a part of the record. It may be added that there are some points of weakness in McHenry's case that tend to raise a doubt whether he was the original inventor, particularly of the combinations set out in counts 1, 2 and 5 of the issue, and that justify the limitation of his claims, in respect of date, to the filing of his application.

On the other hand, there is nothing tending to show the conception by Sharer of the iron plate in the floor of the drier specifically included in counts 3, 4, 6 and 7.

And again, notwithstanding the apparent plausibility and good faith of some of Sharer's claims of conception, drawings and embodiment in actual construction, before his rival's entry in the Patent Office, as testified to by himself, he lacks the

corroboration that is made essential by another established principle of the patent law. *Mergenthaler* v. *Scudder,* 11 App. D. C. 264, 278, and cases cited at p. 279.

The objections to the decision of the examiner of interferences in favor of Sharer, would seem chiefly to be, that he overlooked the foregoing principle, as well as failed to enforce, with necessary strictness, the rule requiring proof beyond a reasonable doubt to overcome the patent of his adversary.

Having found no error in the decision of the Commissioner, it will be *affirmed, and this decision with the proceedings in this court will be certified to the Commissioner of Patents as the law requires. It is so ordered.*